# EXHIBIT 1

In the Matter of the Arbitration Between

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Petitioner,

- and -

CENTURY INDEMNITY COMPANY,

Respondent.

(Regarding Treaty 6 -- 4/1/69-12/31/71)

## CONFIDENTIALITY AGREEMENT

1.    The parties intending to be bound by this agreement are:

    a.    Certain Underwriters at Lloyd's, London subscribing to the Contingency First Excess of Loss Cover ("Treaty 6") (from April 1, 1969 through December 31, 1971), and their agents, employees, officers and directors (hereinafter "Underwriters); and

    b.    Century Indemnity Company, and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors (hereinafter "Century").

2.    Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, Underwriters and Century agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3.    Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information.

In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall

be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4.    For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a.    the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b.    counsel for a party or employees of counsel's law firm who are assisting counsel;

    c.    employees and agents of the parties for purposes consistent with this agreement;

    d.    any party's deposition or trial witness;

    e.    any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

    f.    any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5.    If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other parties in writing as soon as possible after the subpoena, request or court order is received, to permit the other parties to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other parties, the obligated party will cooperate (at the expense of the requesting other parties) in the defense of a demand.

6.    The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Arbitrator:    Denis Loring

Arbitrator:    Charles Ernst

Umpire:     Ann Field

AGREED:

Arbitrator:  _____

Arbitrator:  _____

Umpire:  _____

AGREED:

_____ for Certain Underwriters at Lloyd's, London

_____ for Century Indemnity Company

Dated: May 1, 2008

EXHIBIT A

In the Matter of the Arbitration Between

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Petitioner,

- and -

CENTURY INDEMNITY COMPANY,

Respondent.

(Regarding Treaty 6 -- 4/1/69-12/31/71)

## AFFIDAVIT

_____, being duly sworn, deposes and says:

1.    I live at _____

2.    I am employed as (position) by (name and address of employer),
      _____

3.    I am aware that the parties to In the Matter of the Arbitration Between <u>Certain Underwriters at Lloyd's London and Century Indemnity Company (Re: Treaty 6 (4/1/69-12/31/71)</u> have entered into a Confidentiality Agreement dated May 1, 2008. I have received and read a copy of that Confidentiality Agreement.

4.    I agree to review or otherwise use the material produced in the instant arbitration by _____ only under supervision of a party's counsel and only in connection with this particular arbitration.

5.    I agree that I am bound by the terms of the Confidentiality Agreement as though I were a party to the arbitration, and I will not disclose or discuss material produced by <u>Certain Underwriters at Lloyd's London</u> or <u>Century Indemnity Company</u> to or with any person other than those permitted access to such material under the Confidentiality Agreement.

(Signature)_____

Sworn to before me this _____ day of _____, 20___.

_____
Notary Public (SEAL)

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY,<br>SUCCESSOR TO I INSURANCE COMPANY OF<br>NORTH AMERICA, | : | |
| | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| v. | : | |
| | : | |
| CERTAIN UNDERWRITERS AT LLOYD'S,<br>LONDON | : | **08-MC-219**<br>**Eduardo C. Robreno** |
| | : | |
| Respondent. | : | |
| | : | |
| | : | |

## ORDER

AND NOW, this ____ day of _____, 2008, upon consideration of the Motion to Seal Arbitration Award and memorandum of law in support thereof of Petitioner, Century Indemnity Company, successor to Insurance Company of North America ("Century"), it is hereby ORDERED and DECREED that said Motion is GRANTED.  The final arbitration award dated November 28, 2008, issued in connection with a reinsurance dispute between Petitioner and Respondent and attached as Exhibit 5 to Century's memorandum of law in support of its Petition to Confirm Arbitration Award, shall be filed under seal and shall remain confidential and under seal until further order of this Court.

**UNITED STATES DISTRICT COURT:**

_____
, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CENTURY INDEMNITY COMPANY,          :
SUCCESSOR TO INSURANCE COMPANY OF   :
NORTH AMERICA,                      :
                                    :          CIVIL ACTION NO.
                   Petitioner,      :
                                    :
        v.                          :            08-MC-219
                                    :          Eduardo C. Robreno
CERTAIN UNDERWRITERS AT LLOYD'S,    :
LONDON                              :
                                    :
                   Respondent.      :
                                    :
                                    :

## PETITIONER'S MOTION TO SEAL ARBITRATION AWARD

Petitioner, Century Indemnity Company, successor to Insurance Company of North America ("Century"), hereby moves to have this Court place under seal the final arbitration award dated November 28, 2008 (the "Award"), which is the subject of Century's Petition to Confirm Arbitration Award (the "Petition to Confirm") which is being filed concurrently herewith, for the reasons set forth in the accompanying memorandum of law. The Award is attached as Exhibit 5 to Century's memorandum of law in support of its Petition to Confirm.

Respectfully Submitted,

WHITE AND WILLIAMS LLP

BY:     *C D Russell*

Thomas A. Allen (I.D. No. 21314)
Christine G. Russell (I.D. No. 76915)
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone: 215.864.7000

Dated: December 31, 2008

*Attorneys for Petitioner Century Indemnity Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CENTURY INDEMNITY COMPANY, SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA, | : : : | |
| Petitioner, | : | CIVIL ACTION NO. |
| v. | : : | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | : : | 08-MC-219 Eduardo C. Robreno |
| Respondent. | : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
MOTION TO SEAL ARBITRATION AWARD**

Petitioner, Century Indemnity Company, successor to Insurance Company of North America ("Century"), hereby submits this memorandum of law in support of its Motion to Seal Arbitration Award, and states as follows:

**BACKGROUND**

As relevant here, Certain Underwriters at Lloyd's London ("Lloyd's") participated as Century's reinsurer under Century's Contingency First Excess of Loss Cover ("Treaty 6"), for the period April 1, 1969 to December 31, 1971. A dispute arose between the parties with respect to Century's billing to Lloyd's under the Treaty for Lloyds' share of amounts paid on asbestos-related product liability claims. Lloyd's initiated arbitration against Century on October 26, 2007 for, *inter alia*, declaratory relief with respect to Century's billing under Treaty 6. Century counterdemanded in the arbitration, seeking, *inter alia*, a ruling requiring Lloyd's to pay Century's billing under Treaty 6 for asbestos-related product liability claims.

After discovery and briefing, the arbitration panel (the "Panel") held a four-day evidentiary hearing on November 17-20, 2008. The Panel issued a final award on November 28, 2008 (the "Award"), a copy of which is attached in a sealed envelope as Exhibit 5 to Century's memorandum of law in support of its Petition to Confirm Arbitration Award.

The parties entered into a confidentiality agreement, executed on May 1, 2008 (the "Confidentiality Agreement"). A copy of that agreement is attached hereto as Exhibit 1. The agreement requires that the parties keep confidential, *inter alia*, "Arbitration Information," including the final award and any interim decisions, subject to certain exceptions. (*See* Exhibit 1 at § 2.)  One such exception is that an award may be disclosed "in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award . . . ." (*Id.* at § 3(b).)  However, the agreement also states, in connection with such disclosures, "the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed."   (*Id.* at § 3 (emphasis added).)  Thus, by entering into the Confidentiality Agreement, Century obligated itself to request that the Court maintain the confidentiality agreed to by the parties. Therefore, Century now moves to have this Court seal the Award in order to keep it confidential.[1]

## LEGAL ARGUMENT

Although there is a common law right of public access to judicial records, that right is not absolute. (*See In re Cendant*, 260 F.3d 183, 194 (3d Cir. 2001).)  To overcome this presumptive right of access, the party seeking to have a judicial record sealed bears the burden of showing that there is "good cause" to have the record sealed. (*Shingara v. Skiles*, 420 F.3d 301, 305-06 (3d Cir. 2005) (*citing Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir.

---

[1] Century does not anticipate any opposition from Lloyd's to the Motion to Seal.

1994)).)  In other words, the party seeking to have the record sealed must demonstrate that the interest in secrecy outweighs the presumption of access.  (*In re Cendant*, 260 F.3d. at 194.) Good cause to seal a judicial record exists only if the party seeking the seal can show that disclosure "will result in a clearly defined, specific and serious injury . . . ."  (*Id.*)

In determining whether there is good cause to seal a judicial record, a court should balance the need for public access to the record against the parties' legitimate privacy concerns. *Id.*  When deciding whether to seal the record, a court has "considerable discretion" in balancing these interests. (*See Haber v. Evans*, 268 F. Supp. 2d 507, 510 (E.D. Pa. 2003) (*citing Pansy*, 23 F.3d at 786, and *United States v. Criden*, 648 F.2d 814, 823 (3d Cir. 1981)).  *See also Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1313, 55 L.Ed.2d 570 (1978) ("The decision as to access to [judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.").)  While not exhaustive, a court should consider the following factors in balancing the need for public access to the record against the parties' legitimate privacy concerns:

1)   whether disclosure will violate any privacy interests;

2)   whether the information is being sought for a legitimate purpose or for an improper purpose;

3)   whether disclosure of the information will cause a party embarrassment;

4)   whether confidentiality is being sought over information important to public health and safety;

5)   whether the sharing of information among litigants will promote fairness and efficiency;

6)   whether a party benefiting from the order of confidentiality is a public entity or official; and

7)   whether the case involves issues important to the public.

PHLDMS1 4936134v.1

(*Shingara*, 420 F.3d at 306 (*citing Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (*citing Pansy*, 23 F.3d at 787-91)).)

The Award that Century seeks to have sealed concerns a private dispute between Century and Lloyd's, which the parties resolved through private arbitration.  The Award does not concern public health or safety, nor does it involve a public entity or official.  Any interest that the public would have in viewing the Award is accordingly minimal.  However, on the other side of the scale, the parties' legitimate interest in keeping the Award private is significant.  By entering into private arbitration, and then into a confidentiality agreement, the parties attempted to make clear at the outset their desire for confidentiality.

In a factually analogous matter, *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997), *cert. den.* 118 S.Ct. 695 (1998), the Second Circuit upheld a similar agreement.  In that case, the parties had agreed in the underlying arbitration that:  (1) the documents produced in the arbitration would only be used in the context of that arbitration; and (2) in the event any such produced documents were filed with a court, they would be filed under seal to protect their confidentiality.  (*Id.* at 826.)  When one party filed a petition to modify the arbitration award, and included throughout its papers copies of and references to documents that were the subject of the confidentiality agreement, the district court placed the entire file, except for the court's opinions and orders, under seal.  (*Id.* at 820-21, 826.)  The district court noted the general principle that good cause must be shown for denying public access to judicial files, and concluded that the burden was met under such circumstances.  (*Id.* at 827.)  On appeal of that ruling, the Second Circuit affirmed, finding that the district court did not abuse its discretion given the facts before it.  (*Id.*)

As in *DiRussa*, the instant case calls for a sealing of the Award. Century and Lloyd's entered into a Confidentiality Agreement, in which they expressly agreed that any award would be kept confidential (subject to particular exceptions set forth therein). The ensuing arbitration was conducted privately, with the expectation that the agreed confidentiality would be maintained by both parties (subject again to the exceptions set forth in the Confidentiality Agreement) regardless of the outcome. Thus, the parties have a legitimate interest in maintaining the confidentiality of those proceedings.

Moreover, private, confidential arbitration proceedings are common in the reinsurance industry, and the confidentiality of such proceedings are in fact encouraged by industry organizations like ARIAS-U.S. and the Reinsurance Association of America. (*See* ARIAS-U.S., Practical Guide to Reinsurance Arbitration Procedure § 3.8, Comment C, attached hereto as Exhibit 2 ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement"); Insurance and Reinsurance Dispute Resolution Task Force, Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes, §§ 7.1, 7.2, attached hereto as Exhibit 3 ("All meetings and hearings of the Panel are private and confidential to the Parties . . . . The Panel and the Parties shall use their best efforts to maintain the confidential nature of the arbitration proceedings and the award. . . .).) Undoing the parties' agreement to keep the Award confidential by not sealing it would undermine the arbitration process in the reinsurance industry, where such proceedings are typically confidential.

On the other side of the balancing scale, although the public arguably has an interest in ensuring that this Court administer Century's Petition to Confirm fairly, that interest is neither advanced nor hindered by access to the underlying Award itself. On the contrary, given that the

Court could confirm the award without identifying the particular findings in the Award, the particulars of the Award are not information necessary for the public to assess whether the Court properly administered Century's Petition to Confirm.

In order to satisfy the recognized competing interests, and consistent with the Confidentiality Agreement, Century respectfully requests that the Award be sealed.

## CONCLUSION

For all of the foregoing reasons, Century requests that this Court order that the Award filed as Exhibit 5 to Century's memorandum of law in support of its Petition to Confirm be maintained under seal.

Respectfully Submitted,
WHITE AND WILLIAMS LLP

BY:  *C D Russell*

_____
Thomas A. Allen (I.D. No. 21314)
Christine G. Russell (I.D. No. 76915)
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone:  215.864.7000

Dated:  December 31, 2008

*Attorneys for Petitioner Century Indemnity Company*

PHLDMS1 4936134v.1

# EXH. 1

In the Matter of the Arbitration Between

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Petitioner,

- and -

CENTURY INDEMNITY COMPANY,

Respondent.

(Regarding Treaty 6 -- 4/1/69-12/31/71)

## CONFIDENTIALITY AGREEMENT

1.   The parties intending to be bound by this agreement are:

   a.   Certain Underwriters at Lloyd's, London subscribing to the Contingency First Excess of Loss Cover ("Treaty 6") (from April 1, 1969 through December 31, 1971), and their agents, employees, officers and directors (hereinafter "Underwriters); and

   b.   Century Indemnity Company, and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors (hereinafter "Century").

2.   Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, Underwriters and Century agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3.   Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information.

In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall

be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4.      For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

   a.      the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

   b.      counsel for a party or employees of counsel's law firm who are assisting counsel;

   c.      employees and agents of the parties for purposes consistent with this agreement;

   d.      any party's deposition or trial witness;

   e.      any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

   f.      any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5.      If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other parties in writing as soon as possible after the subpoena, request or court order is received, to permit the other parties to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other parties, the obligated party will cooperate (at the expense of the requesting other parties) in the defense of a demand.

6.      The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Arbitrator:    Denis Loring

Arbitrator:    Charles Ernst

Umpire:    Ann Field

AGREED:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED:

_____ for Certain Underwriters at Lloyd's, London

_____ for Century Indemnity Company

Dated: May 1, 2008

EXHIBIT A

In the Matter of the Arbitration Between

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Petitioner,

- and -

CENTURY INDEMNITY COMPANY,

Respondent.

(Regarding Treaty 6 -- 4/1/69-12/31/71)

**AFFIDAVIT**

_____, being duly sworn, deposes and says:

1.   I live at_____

2.   I am employed as (position) by (name and address of employer),
     _____

3.   I am aware that the parties to In the Matter of the Arbitration Between Certain
     Underwriters at Lloyd's London and Century Indemnity Company (Re: Treaty 6 (4/1/69-
     12/31/71) have entered into a Confidentiality Agreement dated May 1, 2008.  I have
     received and read a copy of that Confidentiality Agreement.

4.   I agree to review or otherwise use the material produced in the instant arbitration by
     _____
     only under supervision of a party's counsel and only in connection with this particular
     arbitration.

5.   I agree that I am bound by the terms of the Confidentiality Agreement as though I were a
     party to the arbitration, and I will not disclose or discuss material produced by Certain
     Underwriters at Lloyd's London or Century Indemnity Company to or with any person
     other than those permitted access to such material under the Confidentiality Agreement.

(Signature)_____

Sworn to before me this _____ day of _____, 20___.


                                        _____
                                        Notary Public (SEAL)

# EXH. 2



Home
About ARIAS
News
Conference/Workshop Calendar
Corporate Members
Membership
ARIAS·U.S. Quarterly
Law Committee Reports
Certified Arbitrators
Search for Arbitrators
New Certification Requirements
Arbitrator and Umpire Certification Procedures
Selecting Umpires
Umpire Selection Procedure
Neutral Selection Procedure
Qualified Mediator Program
Newer Arbitrator Program
Mentoring Program
Code of Conduct
Practical Guide
  Table of Contents
  Chapter I
  Chapter II
  Chapter III
  Chapter IV
  Chapter V
  Chapter VI
Forms
Useful Links
Employment Opportunities
Shipping Information
Site Map

site search   [go]

## Practical Guide to Reinsurance Arbitration Procedure

ARIAS•U.S., a not-for-profit corporation existing principally as an educational society, is dedicated to promoting the integrity of the arbitration process in insurance and reinsurance disputes. Through seminars and publications, ARIAS•U.S. trains knowledgeable and reputable professionals to serve as Panel members in industry arbitrations. The ARIAS•U.S. Board of Directors certifies as arbitrators individual members who satisfy established qualification standards.

For arbitration to remain effective to resolve industry disputes, parties, their counsel, and Panel members must be familiar with arbitration procedure.

ARIAS•U.S. has created this **Practical Guide to Reinsurance Arbitration Procedure (2004 Revised Edition)**, an update of its 1998 Guide, as a reference for arbitrators, insurance and reinsurance professionals, and attorneys involved in reinsurance arbitrations. The Guide draws principally from the experience and expertise of the ARIAS•U.S. membership and offers sample forms and practices for use in reinsurance arbitrations. The purpose of this Guide is to promote fairness, effectiveness, and efficiency in reinsurance arbitrations, i.e. the integrity of the process.

The practices in this Guide are not intended to supersede any express contractual agreements between the parties. To resolve questions about arbitration practice or procedure, one must always consult the arbitration clause in the parties' agreement first. This Guide is intended to provide a reference when (a) as often occurs, the arbitration clause provides little or no express or specific guidance to the arbitration's governing procedures, or (b) the parties wish to enhance or improve those procedures by mutual agreement. Of course, all arbitration practices and procedures are subject to and must be considered in light of any applicable law.

The Table of Contents page provides for efficient navigation through the listed sections of the Guide, since all referenced items are linked directly to their locations. Also, this online version includes convenient links from within the text to all referenced forms and sections of other documents that are here on the website. The linked forms may be edited in any word processing program and printed out.

There could be circumstances where a more portable format would facilitate the arbitration process. Therefore, a PDF of the entire guide is also available on the Forms page through the navigation at the left.

© 2008 ARIAS·U.S. / AIDA Reinsurance & Insurance Arbitration Society
PO Box 9001 · Mount Vernon, NY 10552 · Tel 914.966.3180 x116 · Fax 914.966.3264
Email info@arias-us.org for more information or to provide change of address or other information to ARIAS·U.S.

 mountain media
**Powered by Mountain Media**
Ecommerce Solutions · Shopping Cart Software · Merchant Accounts ·
Internet Marketing · Web Content Management Tools



Home
About ARIAS
News
Conference/Workshop Calendar
Corporate Members
Membership
ARIAS-U.S. Quarterly
Law Committee Reports
Certified Arbitrators
Search for Arbitrators
New Certification Requirements
Arbitrator and Umpire Certification Procedures
Selecting Umpires
Umpire Selection Procedure
Neutral Selection Procedure
Qualified Mediator Program
Newer Arbitrator Program
Mentoring Program
Code of Conduct
Practical Guide
Table of Contents
Chapter I
Chapter II
Chapter III
Chapter IV
Chapter V
Chapter VI
Forms
Useful Links
Employment Opportunities
Shipping Information
Site Map



## Chapter III: The Organizational Meeting

Though not specifically provided for in most arbitration clauses, it is appropriate and customary to begin arbitrations (once a Panel has been selected) with an Organizational Meeting. The meeting usually marks the first time the parties and the Panel meet. At the Organizational Meeting, Panel members disclose prior relationships with the parties, their counsel, other Panel members, and any potential witnesses brought to the Panel's attention. After such disclosures and any resulting discussion, parties are typically asked to, and in most instances do, accept the Panel as duly constituted. The Organizational Meeting also gives parties an opportunity to execute agreements, including "hold harmless" and confidentiality agreements, and gives the Panel an opportunity to establish an arbitration schedule, usually with the assistance of the parties and their counsel.

The Organizational Meeting can be fairly expensive if parties, their counsel and the arbitrators must gather from distant locations to meet face to face. A face-to-face meeting may also take considerable time to arrange, as travel time may limit the participants' ability to identify a mutually acceptable date. While the amount at stake in many arbitrations may justify this time and expense, ARIAS•U.S. also proposes procedures for streamlined arbitrations (discussed below in **Chapter 6**). Alternatively, if the parties and Panel agree, the Organizational Meeting may be held telephonically, potentially reducing the expense and time required for a face-to-face meeting.

### 3.1 PRE-MEETING CONFERENCE CALL:

Before the Organizational Meeting, the umpire should communicate (by teleconference or correspondence) first with the arbitrators and then the parties and/or their counsel to discuss agenda items, logistics, pre-meeting submissions, and other topics.

**COMMENT A:**

A proposed Agenda for the Organizational Meeting is available here in **ARIAS•U.S. Sample Form 3.1**. A discussion of the agenda items appears in the text below.

**COMMENT B:**

Before the pre-meeting conference call, the Panel should request a copy of and review the arbitration clause or clauses in the contract(s) to determine any applicable procedures or other guidelines. The Panel should be aware of any contractual time restrictions that may be subject to waiver. If the relevant arbitration clause specifies particular procedural rules, the Panel should obtain those rules from the parties and review them before the Organizational Meeting.

**COMMENT C:**

Arbitration is a matter of contract. If both parties have explicitly agreed to a matter and wish to enforce that agreement, the Panel must follow. An arbitrator who cannot abide by the parties' agreements should resign.

### 3.2 SITE OF THE ORGANIZATIONAL MEETING:

Absent the parties' agreement, the Organizational Meeting should be held in the most convenient location for all attendees.

**COMMENT:**

If the arbitration clause does not designate a location for the Organizational Meeting and the parties do not agree on a location, the Panel should choose the location. In making this decision, the Panel should consider which location minimizes the cost to all parties to the arbitration.

### 3.3 STATEMENT SUBMITTED TO THE PANEL BEFORE THE ORGANIZATIONAL MEETING:

Before the Organizational Meeting, each party should submit a short Position Statement that apprises the Panel of the facts, issues, and demands between the parties, as well as either a joint proposal, or the parties' individual proposals, for a pre-hearing schedule and a hearing date.

**COMMENT A:**

The Position Statement is principally designed to give the Panel a general case background to provide a frame of reference for any procedural decisions the Panel makes at the Organizational Meeting. For example, a Panel may be unable to assess a party's stated need for extensive discovery without some knowledge of the dispute's factual background.

**COMMENT B:**

If the Panel wants to set a page limit on submissions before the Organizational Meeting, it should give due consideration to the complexity of the issues and to whether a pagelimit restriction (standard letter size) would be unfair to one or more parties. ARIAS•U.S. recommends that the Panel not impose a strict page limit, but instead suggest a recommended length.

**COMMENT C:**

To facilitate the scheduling process, the parties should work together prior to the Organizational Meeting to agree on a pre-hearing schedule. If the parties cannot agree on one or more elements of the schedule prior to the Organizational Meeting, the parties' Position Statements should present sufficient information for the Panel to consider and resolve the scheduling issues, including the party's positions on the merits of the dispute, the issues to be decided, the types and amounts of relief sought, and the discovery each party may need to develop or prove its position. To help identify necessary discovery and resolve discovery disputes, it may be appropriate for the Position Statements to include initial document production requests and/or identification of fact witnesses each party anticipates it may need to develop or prove its position. If appropriate, the parties' Position Statements should also advise the Panel whether they foresee a need for expert witness testimony at the hearing.

## 3.4 IDENTIFICATION OF THE ISSUES TO BE ARBITRATED:

As part of the Position Statement or at the Organizational Meeting, the Panel should ask the parties to identify precisely the issues and defenses that will be subjects of the arbitration.

**COMMENT A:**

Parties should be required, as early in the arbitration process as possible, to identify all claims and defenses they will present at the hearing. This avoids the injustice of a lastminute claim or defense and gives parties fair notice of each other's claims and contentions, which usually influences the scope of discovery.

**COMMENT B:**

Knowledge of the claims, defenses and issues at the Organizational Meeting allows the Panel to rule intelligently on the scope of appropriate discovery and to impose reasonable limitations.

**COMMENT C:**

Identifying the issues to be arbitrated also provides a reference point for the Panel should a party later request an extended discovery period to respond to a "newlyraised" issue. The Panel can consult the statements of claims and defenses before or at the Organizational Meeting to determine whether the issue is in fact "newly raised."

**COMMENT D:**

Early issue identification should not always limit the parties to pre-discovery claims or defenses. The Panel should normally give the parties latitude to amend their claims and defenses up to a reasonable period before the hearing, with due notice to and after comment by all involved parties.

**COMMENT E:**

In appropriate cases, the Panel should consider, with the parties' input, whether bifurcation of the arbitration into phases (for instance, one phase on liability and a second on damages) would promote an efficient resolution of the dispute. In most instances one final hearing, rather than two, will be most efficient.

## 3.5 ORGANIZATIONAL MEETING ATTENDANCE:

Except in cases in which the amount claimed or the disputed issue do not warrant it, both company official(s) and outside counsel should represent the parties at the Organizational Meeting.

**COMMENT:**

Party representatives' direct involvement at all stages of the arbitration process increases the potential for businessperson-to-businessperson dealings and reduces the risk of the arbitration process becoming unduly lawyer-driven. Party representative attendance at the Organizational Meeting in particular also ensures that the parties are fully aware of discovery and pre-hearing obligations and the timetables for meeting those obligations.

## 3.6 PANEL DISCLOSURES:

At the Organizational Meeting, all members of the Panel should reveal on the record their past, present, and any known future business and personal relationships with the parties, the parties' counsel, other Panel members, and any potential witnesses who are identified in documents provided to the Panel members.

**COMMENT A:**

Disclosures should include business, professional, and personal contacts, including contacts in other reinsurance arbitrations. Business and professional contacts should include, when applicable, both individuals and their organizations. Disclosures should include whether Panel members have served as expert witnesses for any party and/or their respective counsel. Panel members should also disclose if they were involved with the particular reinsurance contracts at issue.

**COMMENT B:**

Panel members may consider it advisable to prepare a written list of all relationships with the parties, their counsel and other Panel members for distribution at or before the Organizational Meeting, and to supplement that list orally, if needed, on the record at the meeting. If the Organizational Meeting proceedings are not transcribed, a written list with any written supplementation is especially important.

**COMMENT C:**

Given the myriad relationships a Panel member may have had over the years with participants in the given arbitration, even the best-intentioned Panel member may forget to disclose a contact of which one party's representative or counsel is aware. To avoid later disputes over whether the non-disclosure was intentional and/or whether the undisclosed contact warrants disqualifying the Panel member or overturning an arbitration award, at the Organizational Meeting party representatives and counsel should supplement the Panel•s disclosures with any undisclosed contacts of which they are aware between Panel members and the party or counsel.

### 3.7 FORMAL ACCEPTANCE OF PANEL:

Once Panel members have made all disclosures, the parties are traditionally asked to accept the Panel as duly constituted.

**COMMENT A:**

ARIAS•U.S. **Sample Form 3.2** is a proposed Hold Harmless Agreement, in which the parties formally accept the Panel and agree to hold the Panel members harmless against any claims related to their service in the arbitration.

**COMMENT B:**

A party may effectively have no remedy, other than proceeding to arbitration with all rights reserved, if it challenges one or more Panel members. A party in this circumstance should consider appropriate amendments to the proposed Hold Harmless Agreement, ARIAS•U.S. **Sample Form 3.2**. Many courts have refused to entertain pre-hearing petitions to disqualify arbitrators on the ground of bias, absent special circumstances (e.g., a request to enforce a contractual requirement for "impartial" arbitrators). Such challenges, some courts have held, should be brought after the arbitration on a motion to vacate the award.

**COMMENT C:**

Panel members have no intrinsic right to be "held harmless" by all parties to the arbitration. Panel members presumably have arbitral immunity (akin to judicial immunity) that protects them from liability for their service as arbitrators, although the extent of this immunity is not precisely defined in all jurisdictions. Clearly, a Panel has the power (but is not obliged) to proceed without a hold harmless agreement. It is the position of ARIAS•U.S. that absent extraordinary circumstances, parties should hold Panels harmless. Panel members generally are retired individuals or current executives acting in a personal capacity. To encourage their continued participation, these individuals should in most circumstances receive assurance that their personal assets are not at risk.

### 3.8 CONFIDENTIALITY:

The confidentiality of arbitration proceedings should be memorialized in either an agreement by the parties and the Panel, or an order entered by the Panel, setting forth the terms and scope of the confidentiality.

**COMMENT A:**

Most parties to arbitration prefer that the proceedings remain confidential. One advantage of the arbitration process is that confidentiality is much easier to maintain in arbitrations than in litigation.

**COMMENT B:**

A confidentiality agreement is usually entered by agreement of the parties and the Panel.

**COMMENT C:**

It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement. Cases may arise, however, in which either partial or no confidentiality may be appropriate (e.g., if the cedent wants to disclose arbitration results to a related reinsurer, or if the current proceedings may be relevant to another pending or future proceeding between the same parties). If one party opposes total confidentiality of the arbitration, the Panel should consider the parties• arguments on the issue and use its discretion in ordering whether and to what extent the arbitration should be confidential. If the parties agree to a certain level of confidentiality, the Panel should enter an order or sign a confidentiality agreement reflecting the parties' agreement.

**COMMENT D:**

**ARIAS•U.S. Sample Form 3.3** is a sample Confidentiality Agreement form. This form can be converted to an Order, rather than an Agreement, if necessary.

## 3.9 EX PARTE COMMUNICATIONS:

At the Organizational Meeting, the Panel should establish a date for the cut-off of all ex parte communications between parties and the Panel members.

**COMMENT A:**

Possible dates for the cut-off of ex parte communications include (a) the Organizational Meeting; (b) the end of discovery; (c) the filing of pre-hearing briefs; or (d) commencement of the hearing.

**COMMENT B:**

There is a wide range of views about the most appropriate cut-off date for ex parte contact. Some believe that all ex parte communications between the parties and the Panel must cease immediately after the Organizational Meeting to ensure the fair-minded administration of the arbitration. Others believe that procedural issues can be resolved more efficiently, and settlement prospects can occasionally be advanced, if ex parte contact is permitted up until the hearing. No ex parte communication should be permitted during the final hearing because the risk of disclosing confidential Panel deliberations involving the resolution of the dispute is too great. Since each Panel member has a duty to hear the evidence and decide the case impartially, there should be no reason for any ex parte contact with the parties during the hearing.

**COMMENT C:**

If the Panel permits ex parte contact to continue beyond the Organizational Meeting, certain confidentiality issues arise. Normally, ex parte communications are confidential. Participants in the arbitration expect that discussions between a party and the arbitrator it appointed will not be shared with other Panel members. In addition, arbitrators must remember that Panel deliberations are and should remain confidential. Because the Panel is a quasi-judicial body, some privilege may attach to their discussions, and Panel members may be able to invoke that privilege if one or both parties approach them about their discussions or deliberations. Unless the Panel specifically decides otherwise, Panel members should not disclose Panel discussions to the parties.

## 3.10 SCHEDULING:

At the Organizational Meeting, the Panel should establish, with the parties' input, a hearing date and estimated hearing length, including additional time for Panel deliberations after the parties have presented the case. As discussed in greater detail in **Chapter 4**, the Panel should also work with the parties to establish a workable schedule for discovery, briefing, and other pre-hearing events at or shortly after the Organizational Meeting.

**COMMENT A:**

The hearing should be held at a neutral site, unless the parties agree otherwise. The Panel should ask one of the parties to make the necessary accommodations, i.e., rental of hearing room and proposed overnight accommodations, if necessary. Both parties should equally share the cost of the hearing room, court reporter and other hearing costs.

**COMMENT B:**

In establishing this schedule, the parties and Panel should ensure that the final exchange of hearing exhibits occurs sufficiently before the beginning of the hearing to preclude unfair surprise.

## 3.11 PARTY STIPULATIONS:

The Panel should generally accept the parties' stipulations (if any) concerning discovery, scheduling, cut-off of ex parte communication with Panel members, and order and timing of briefs.

## 3.12 INTERIM DISPUTES:

The parties and Panel should establish a protocol to handle disputes (e.g., concerning discovery) that may arise in the time between the Organizational Meeting and the hearing. For example, they might agree that communications will be by e-mail; and that (absent Panel request for oral argument) a disputed matter will be ripe for decision after a submission, an answer, and a reply by the moving party. The parties and Panel should also discuss whether disputes must always be resolved by the entire Panel, or whether under certain circumstances disputes may be resolved (a) by the umpire alone, or (b) jointly by the two arbitrators.

## 3.13 MISCELLANEOUS ISSUES:

The Panel should afford the parties and their counsel the opportunity to raise any other matters at the Organizational Meeting, though the Panel should encourage the parties and their counsel to agree on as many procedural issues as possible before the Organizational Meeting.

**COMMENT A:**

Special arrangements, e.g., creation of an escrow account, are sometimes made for the payment of the umpire's fees.

**COMMENT B:**

A party's request for pre-hearing security is typically addressed at the Organizational Meeting, but full briefing normally should occur in advance of the meeting. Pre-hearing security is discussed in greater detail in **Chapter 4**, which sets forth a proposed form of order.

**COMMENT C:**

Normally, a court reporter should transcribe the Organizational Meeting proceedings.

**COMMENT D:**

The Panel should consider whether the relevant arbitration clause designates specified procedural rules (e.g., the American Arbitration Association Commercial Arbitration Rules, or the Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes), whether particular rules apply to an international arbitration, and/or whether the parties have agreed to any other set of procedural rules.

© 2008 ARIAS·U.S. / AIDA Reinsurance & Insurance Arbitration Society
PO Box 9001 · Mount Vernon, NY 10552 · Tel 914.966.3180 x116 · Fax 914.966.3264
Email info@arias-us.org for more information or to provide change of address or other information to ARIAS·U.S.

mountain media  **Powered by Mountain Media**
Ecommerce Solutions · Shopping Cart Software · Merchant Accounts ·
Internet Marketing · Web Content Management Tools

# EXH. 3

# PROCEDURES FOR THE RESOLUTION OF U.S. INSURANCE AND REINSURANCE DISPUTES

## APRIL 2004

parties shall appoint a replacement umpire in accordance with the procedure set forth in ¶6.7.

6.10    Unless otherwise awarded by the Panel pursuant to Article 8 or ¶15.3, each Party shall bear the costs of its Party-appointed arbitrator and shall share equally the cost of the umpire.

## 7.  *CONFIDENTIALITY*

7.1     All meetings and hearings of the Panel are private and confidential to the Parties. Only the Panel, the Parties, the duly authorized representatives of the Parties and others participating in the proceedings may be admitted to meetings and hearings.

7.2     The Panel and the Parties shall use their best efforts to maintain the confidential nature of the arbitration proceedings and the Award, including the hearing and any written explanation of the Award, except (a) as necessary in connection with a judicial proceeding relating to the arbitration or the Award; (b) as otherwise required by law, regulation, independent accounting audit or judicial decision; (c) to support reinsurance or retrocessional recoveries; or (d) as otherwise agreed by the Parties. The Parties shall use their best efforts to maintain this confidentiality when pursuing any of the exceptions set forth in this paragraph, including the filing of pleadings under seal when permitted.

## 8.  *INTERIM RELIEF AND RULINGS*

8.1     A Panel may issue orders for interim relief, including pre-award security.

8.2     The Panel shall have the power to impose sanctions for failure to comply with an interim ruling by the Panel or for discovery-related abuse. Such sanctions shall include but are not limited to: striking a claim or defense; barring evidence on an issue; drawing an adverse inference against a Party; and imposing costs, including attorneys fees, associated with such abuse or failure to comply.

## 9.  *LOCATION OF PROCEEDINGS*

9.1     The location of all proceedings shall be at a place specified in the Arbitration Agreement or as otherwise agreed to by the Parties. In the absence of agreement, the location shall be in a convenient location as determined by the Panel.

## CERTIFICATE OF SERVICE

I, Christine G. Russell, hereby certify that I caused to be served a true and correct copy of Petitioner Century Indemnity Company's Motion To Seal Arbitration Award, memorandum of law in support thereof, and Proposed Order, this 31st day of December, 2008, by United States mail upon the following counsel for Respondent:

> Mendes and Mount LLP
> 750 Seventh Avenue
> New York, N.Y. 10019-6829
>
> Jack B. Gordon, Esquire
> Fried Frank Harris Shriver
> 1001 Pennsylvania Ave., N.W.
> Washington, DC 20004

> Respectfully submitted,
>
> **WHITE AND WILLIAMS LLP**
>
> *C D Russell*
> _____
> Christine G. Russell, Esq.
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
> Phone: 215.864.7000
>
> *Attorneys for Petitioner Century Indemnity Company*

Dated:  December 31, 2008

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CENTURY INDEMNITY          :     CIVIL ACTION
COMPANY,                   :     NO. 08-219
                           :
        Plaintiff,         :
                           :
v.                         :
                           :
CERTAIN UNDERWRITERS       :     **FILED** JAN 1 2 2009
AT LLOYD'S, LONDON         :
                           :
        Defendant.         :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    JANUARY 12, 2009

        Century Indemnity Company ("Plaintiff") filed the
instant motion to seal an arbitration award under Fed. R. Civ. P.
26(c)(1)(F).  For the reasons that follow, the motion will be
granted.


I.    BACKGROUND & PROCEDURAL HISTORY

        Plaintiff and Certain Underwriters at Lloyd's, London
("Defendant") entered into a reinsurance treaty whereby Defendant
agreed to indemnify Plaintiff with respect to a specified portion
of Plaintiff's obligations under insurance policies it issued in
exchange for a portion of the premium paid to Plaintiff for the
underlying insurance policies.  Plaintiff is a corporation
organized under the laws of Pennsylvania.  Defendant is a
business organized under the laws of London, England.

-1-

The instant dispute arose under the Plaintiff's
Contingency First Excess of Loss Cover ("Treaty 6"), in which
Defendant participated as Plaintiff's reinsurer for the period
between April 1, 1969 to December 31, 1971.  Specifically,
Plaintiff advised Defendant in 2003 and 2005 that it anticipated
billing Defendant under Treaty 6 for its share of amounts
Plaintiff paid for asbestos-related product liability claims.
Defendant refused to pay and initiated a single arbitration
against Plaintiff on October 26, 2007, pursuant to the
arbitration clause in Treaty 6.

In anticipation of the arbitration hearing, the parties
entered into a confidentiality agreement on May 1, 2008 (the
"Confidentiality Agreement").  The Confidentiality Agreement
requires that the parties keep confidential "Arbitration
Information," including the final award.  Ex. 1, Pet'r Memo. Mot.
Seal § 2.  As an exception to the Confidentiality Agreement, an
award may be disclosed "in connection with court proceedings
related to any aspect of the arbitration . . . ."  Id. at § 3(h).
However, in the event of such disclosure "the parties agree,
subject to court approval, that all submissions of Arbitration
Information to a court shall be sealed."  Id. at § 3.

After discovery and briefing, the arbitration panel
(the "Panel") held a four-day evidentiary hearing on November 17
through November 20.  The Panel issued a final award on November

28, 2008 (the "Award").  The arbitration clause in Treaty 6

provides that the decision of the Panel shall be final and

binding upon all parties.  Plaintiff has moved to confirm the

arbitration award.  Plaintiff argues that the Award should remain

under seal while the instant case is being adjudicated.

Defendant does not contest this motion.


II.  JURISDICTION

        Jurisdiction is based on the Federal Arbitration Act, 9

U.S.C. §§ 201-08.  The instant proceeding involves a commercial

arbitration agreement that is not entirely between citizens of

the United States.  See § 202.  Therefore, this Court has subject

matter jurisdiction under § 203 of the Federal Arbitration Act,

which provides:

> An action or proceeding falling under the [Convention
> on the Recognition and Enforcement of Foreign Arbitral
> Awards of June 10, 1958 (the "Convention")] shall be
> deemed to arise under the laws and treaties of the
> United States.  The district courts of the United
> States . . . shall have original jurisdiction over such
> an action or proceeding, regardless of the amount in
> controversy.

Id.; accord 28 U.S.C. § 1331 (proclaiming "[t]he district courts

shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.")

(emphasis added).


III. MOTION TO SEAL THE ARBITRATION AWARD

                              -3-

Plaintiff argues the Award should remain under seal for two reasons.  First, the parties seek to uphold the terms of the Confidentiality Agreement.  Second, the integrity of the arbitration process in the reinsurance industry, where such proceedings are typically confidential, could be jeopardized.  In support of the second argument, Plaintiff appends reinsurance procedure statements from ARIAS-U.S. and Insurance and Reinsurance Dispute Resolution Task Force.  See Exs. 2-3, Pet'r Mot. Seal.

The strong common law presumption of public access to judicial records is not absolute.  In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001).  However, this presumption is rebutted only when a court is satisfied, after balancing the competing interests, that the need for secrecy outweighs the presumption of access.  Id.  The party seeking to have the record sealed "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure."  Id. (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994)).  The movant must show specific and serious injury; broad allegations are insufficient.  Id.

Sealing judicial records is within the sound discretion of the court.  Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 371 (3d Cir. 2008) (citing Pansy v. Borough of Stoudsburg,

-4-

23 F.3d 772, 783 (3d Cir. 1994)).  The Third Circuit recently cited factors to consider in the determination of whether to grant a protective order.  <u>Shingara v. Skiles</u>, 420 F.3d 301, 306 (3d Cir. 2005) (citing <u>Pansy</u>, 23 F.3d at 787-91).  These factors include:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party embarrassment;
> (4) whether confidentiality is being sought over information important to public health and safety;
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> (7) whether the case involves issues important to the public.

<u>Id.</u>

The Court will consider the aforementioned factors <u>ad seriatim</u>.  First, there is a significant "business" privacy interest that would affect Defendant if the Award is disclosed. Second, the purpose behind sealing the Award is legitimate.  The parties entered into a Confidentiality Agreement and it is the practice in the reinsurance industry to keep arbitration proceedings, including final awards, confidential.  Third, public health and safety issues are not implicated here.  Fourth, upholding the terms of the Confidentiality Agreement will promote the voluntary execution of private arbitration agreements; a sound public policy objective.  Fifth, neither party is a public

-5-

entity or official.

For the foregoing reasons, the motion will be granted.

-6-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CENTURY INDEMNITY           :       CIVIL ACTION
COMPANY,                    :       NO. 08-219
                            :
        Plaintiff,          :
                            :
v.                          :
                            :
CERTAIN UNDERWRITERS        :
AT LLOYD'S, LONDON          :
                            :
        Defendant.          :

**O R D E R**

**AND NOW**, this **12th day of January 2009**, it is hereby
**ORDERED**, for the reasons stated in the accompanying memorandum,
Plaintiff's motion to seal the arbitration award (doc. no. 1) is
**GRANTED**.

        **AND IT IS SO ORDERED**.

                                _____
                                **EDUARDO C. ROBRENO, J.**